IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARK E. ASHWORTH,                                   CV 04-1403-BR

          Plaintiff,                                OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

          Defendant.


**MERRILL SCHNEIDER**
SCHNEIDER LAW OFFICES
PO BOX 16310
Portland, OR 97292
(503) 255-9092

**LINDA ZISKIN**
4800 SW Meadows Road, Suite 300
Lake Oswego OR 97035
(503) 534-3563

          Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**VIKASH CHHAGAN**
Acting Regional Chief Counsel
**JOANNE DANTONIO**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2730

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Mark Ashworth brings this action for judicial
review of a final decision of the Commissioner of Social Security
denying his application for disability insurance benefits (DIB)
under Title II of the Social Security Act.  This Court has
jurisdiction pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **AFFIRMS** the
Commissioner's final decision.


<u>BACKGROUND</u>

    Ashworth was born February 19, 1957.  He has a high school
education and worked in the past as a garbage hauler and a
delivery driver.  He last worked on November 23, 2000, when he
sustained injuries to his left femur and right foot in a work-

related accident.  Ashworth alleges he became disabled as a
result of his injuries because he "can hardly walk, sit, stand or
drive for any period of time" and is "extremely sensitive to
different surfaces."  Tr. 95.[1]  He has chronic pain while sitting
or standing, which limits his ability to concentrate and to
"perform minimal functions."  Tr. 102.

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
*See also* 20 C.F.R. § 404.1520.  Ashworth challenges the ALJ's
findings at Steps Two, Three, and Five of the sequential process.

At Step Two of the sequential process, the Commissioner will
find the claimant not disabled if the ALJ determines the claimant
has no "medically severe impairment or combination of
impairments."  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R.
§ 404.1520(c).

At Step Three, the Commissioner will find the claimant
disabled if the ALJ determines the claimant's impairments meet or
equal "one of a number of listed impairments that the

---

[1] Citations to "Tr." refer to the page(s) indicated in the
official transcript of the administrative record filed with the
Commissioner's Answer.

[Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 404.1520(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the adjudication proceeds beyond Step Three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). *See also* Social Security Ruling (SSR) 96-8p.

If the adjudication reaches Step Five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 404.1520(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At Step Two, the ALJ identified a combination of medically determinable impairments that satisfied the regulatory definition of "severe" because they significantly limited Ashworth's ability to perform basic work activities. The ALJ described those impairments as follows:

> status-post operation for placement of intermedullary rod in the left thigh, and pins in the right foot with resulting limitation of motion, probable osteoarthritic changes in the right foot and both ankles, and depression.

Tr. 20.

At Step Three, the ALJ determined Ashworth's impairments, considered separately or in combination, did not satisfy the criteria for any presumptively disabling condition in the Listing of Impairments.

The ALJ assessed Ashworth's RFC as follows:

> The claimant retains the residual functional capacity to work at a limited range of sedentary exertion work. "Sedentary exertion work" involves sitting and occasional walking and standing; lifting no more than 10 pounds at a time, and occasional lifting or carrying articles like docket files, ledgers and small tools. The range of sedentary exertion activity he can do is narrowed by non-exertional limitation. He is able to stand and/or walk for at least two hours in an eight-hour workday. He is limited to occasional use of foot controls. He is unable to climb or balance. He is limited to occasional stoop, kneel, crouch and crawl. He must avoid hazards. He must avoid public interaction.

Tr. 23.

At Step Five, the ALJ found Ashworth's RFC left Ashworth able to work in a significant number of jobs that exist in the national economy. The ALJ identified examples of such work drawn from the testimony of the vocational expert (VE): sedentary small-products assembly jobs and work as a surveillance-system monitor.

The ALJ concluded Ashworth was not under a disability at any time through the date of the ALJ's decision and was not eligible for benefits under Title II of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is

susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Ashworth contends the ALJ failed to identify all of his severe impairments at Step Two and failed to determine properly whether his combined impairments satisfied the regulatory criteria for any condition in the Listing of Impairments at Step Three.

Ashworth alleges the ALJ failed to assess his RFC accurately because he improperly rejected the findings and opinions of two treating physicians and the assertions of his wife, who provided written statements and testimony as a lay witness. He also contends the ALJ failed to consider his impairments in combination when assessing his RFC.

Finally, Ashworth contends the ALJ erred at Step Five because the vocational evidence was legally inadequate. Ashworth asserts the ALJ elicited testimony from the VE with a hypothetical question that did not accurately reflect all of Ashworth's functional limitations.

## I.   **Ashworth's Severe Impairments**

Ashworth contends the ALJ erred by failing to assess Ashworth's chronic pain disorder and mechanical low-back pain as "severe" impairments for the purposes of Step Two.  The ALJ,

however, did not deny Ashworth's claim at Step Two.  The ALJ can deny a claim at Step Two only if the evidence shows the individual does not have any impairments that cause more than a minimal effect on the person's ability to work.  SSR 85-28.  Here the ALJ found Ashworth has medically severe impairments, and the ALJ properly continued the sequential evaluation until he reached a conclusion at Step Five.  SSR 96-3p.

Ashworth also did not show his chronic pain disorder or mechanical low-back pain had functionally limiting effects.  To show that an impairment is severe for the purposes of Step Two, the claimant must show the impairment significantly limits his ability to perform basic work activities.  20 C.F.R. § 404.1521.  These include physical functions such as walking, standing, and sitting, and mental functions such as understanding, remembering, using judgment, and responding appropriately to work situations.  20 C.F.R. § 404.1521(b).

As noted, Ashworth did not show his chronic pain disorder or mechanical low-back pain impeded his ability to perform any basic work activity.  He testified his combined impairments limited him to short periods of sitting and standing.  The ALJ, however, discredited Ashworth's testimony, and Ashworth did not challenge that finding.

Except for his testimony, Ashworth does not identify evidence of functional limitations from mechanical low-back pain.

Mark Kallgren, M.D., diagnosed Ashworth as having mechanical low-back pain based on subjective reports, but Dr. Kallgren did not make any findings of functional limitations.  In Ashworth's subjective report to Dr. Kallgren, back pain was the least significant of his symptoms.

Similarly, Ashworth did not identify medical evidence of functional limitations from chronic pain disorder.  The record reflects Ashworth told John Bauer, M.D., that pain was causing depression and anxiety problems "manifesting as a short temper as well as feelings of being anxious from time to time."  Tr. 299. Even if this subjective report had arisen from a medical source, it would not establish significant limitation in Ashworth's basic work abilities.

The record reflects James Lundy, Ph.D., found Ashworth's chronic pain resulted in "major depressive symptoms."  Tr. 415. The ALJ accepted that portion of Dr. Lundy's opinion and included depression among Ashworth's severe impairments identified at Step Two.

Because Ashworth has not shown the additional impairments result in any functional limitations beyond those imposed by the severe impairments identified by the ALJ, the Court sustains the ALJ's findings and conclusion at Step Two.

## II.  **Listing of Impairments**

Ashworth contends the ALJ failed to assess properly whether Ashworth's impairments were equivalent to any in the Listing of Impairments.  Ashworth, however, fails to specify the listed impairment that his condition allegedly meets or equals.

The claimant has the burden to establish that he meets or equals the criteria for a listed impairment based on medical evidence.  *Sullivan v. Zebley,* 493 U.S. 421, 431 (1990).  *See also Tackett v. Apfel,* 180 F.3d at 1100; 20 C.F.R. § 404.1526. The regulations require the ALJ to compare "the symptoms, signs and laboratory findings . . . shown in the medical evidence . . . with the medical criteria shown with the listed impairment." 20 C.F.R. § 404.1526(a).  The claimant's description of symptoms is not sufficient to establish the presence of a physical or mental impairment.  20 C.F.R. § 404.1529(b).  *See also* SSR 86-8.

The ALJ compared the medical evidence in the record with the medical criteria in the Listing of Impairments.  He examined the criteria for musculoskeletal disorders involving a weight-bearing joint and mental impairments involving affective disorders.  For the latter, he applied the psychiatric review technique described in 20 C.F.R. § 404.1520a and considered the expert opinions of agency psychological consultants who concluded Ashworth's condition is not equivalent to the criteria for any Listing.

Ashworth does not assert equivalence with a specific Listing or identify specific medical evidence that shows equivalence. Accordingly, the Court finds Ashworth has failed to establish that he meets or equals the criteria for a listed impairment.

## III. RFC Assessment

Ashworth contends the ALJ failed to accurately assess his RFC by improperly rejecting the opinions of two treating physicians, discrediting the statements of Ashworth's wife, and failing to consider Ashworth's impairments in combination.

### A. Medical Source Statements

Ashworth contends the ALJ improperly rejected the opinions of Dr. Lundy and Bret Dales, M.D. Dr. Lundy is a psychologist who treated Ashworth for depression. Dr. Dales is an orthopedic specialist who followed Ashworth's recovery from his work injuries.

#### 1. Dr. Dales's Opinion

Ashworth's orthopedic care was transferred to Dr. Dales in April 2001 when Ashworth's orthopedic condition was not yet medically stationary. Dr. Dales made varying statements about Ashworth's capabilities as Ashworth's condition progressed. Initially, Dr. Dales opined Ashworth would not be able to return to his usual work activities as a garbage collector and should obtain training to work in a sedentary position. In May 2001,

Dr. Dales released Ashworth for sedentary work, but Ashworth did not find any such work available.

In July 2001, Dr. Dales opined Ashworth could perform light work with a one-hour maximum standing capacity. Later in July 2001, Dr. Dales reported Ashworth was not capable of standing or walking activities for a cumulative total of more than two hours in an eight-hour period.

In December 2001, Dr. Dales opined "Ashworth would have difficulty performing any job which required more than one to two hours periods of time on his feet." Tr. 283. He did not estimate the cumulative daily total time that Ashworth would be able to spend on his feet. In March 2002, Dr. Dales reported Ashworth was capable of sedentary work.

In October 2002, Dr. Dales completed a worksheet in which he indicated Ashworth could walk or stand less than one hour in an eight-hour day with normal breaks. Ashworth contends the ALJ improperly rejected Dr. Dales's last statement limiting Ashworth to less than one hour on his feet.

If a treating physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). The ALJ can reject the treating physician's opinion in favor of the conflicting opinion of another treating or examining physician if the ALJ makes "findings setting forth

specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*. at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ considered Dr. Dales's statements and agreed with Dr. Dales's conclusion that Ashworth could not return to his previous work as a garbage collector and would be limited to sedentary work. Regarding Ashworth's ability to stand and to walk, the ALJ correctly noted it had been "variously reported" in a range from less than one hour to over two hours. Tr. 24.

Dr. Dales's own statements from 2001 indicate Ashworth could walk or stand for two hours. The ALJ noted the medical record did not indicate intervening changes in Ashworth's medical condition that would cause greater limitations after these contemporaneous statements.

The ALJ also relied on the consultative examination of Douglas Bald, M.D. In November 2001, Dr. Bald opined Ashworth would be limited to two hours on his feet during an eight-hour workday. The record does not contain any medical evidence to support a finding that Ashworth's ability to be on his feet diminished after Dr. Bald's examination.

The ALJ also relied on reports of Ashworth's activities, including reports that he experienced stiffness after walking more than two hours, provided daily child care for his three children, went on two-mile walks, performed yard work, and

had been running around too much to perform exercises prescribed by his physical therapist.  The ALJ reasonably concluded Ashworth's level of activity was consistent with the ability to stand and to walk sufficiently to perform sedentary work.

The foregoing reasons provide an adequate basis for the ALJ to reject Dr. Dales's statement that Ashworth can stand for less than one hour only during an eight-hour workday.

### 2.  Dr. Lundy's Opinion

Dr. Lundy began treating Ashworth in November 2002.  At that time, Ashworth's mood was depressed and anxious and his affect was worrisome and sad.  Ashworth had no impairment in thought process, cognitive function, memory, or judgment.

In the ensuing months, Ashworth tried various antidepressant medications, including Prozac, Paxil, Celexa, Wellbutrin, Effexor, and Zoloft.  These had benefits initially, but Ashworth discontinued each medication because he did not like the way they made him feel.

Dr. Lundy saw Ashworth in individual psychotherapy sessions at approximately one-month intervals.  He did not administer testing, and he did not note any mental status examination after the initial visit.  In January 2004, Dr. Lundy completed a worksheet indicating that Ashworth was markedly limited in three of the four major functional categories: restrictions of activities of daily living; difficulties in

maintaining social function; and difficulties in maintaining

concentration, persistence, or pace.

Dr. Lundy completed another worksheet indicating that

Ashworth was markedly limited in the ability to maintain

attention and concentration for extended periods, to maintain

regular attendance, and to complete a normal workday without

interruptions from psychologically based symptoms. Dr. Lundy

added explanatory notes in which he stated:

> Mr. Ashworth is currently disabled to a
> marked degree in terms of his activities
> of daily living, his social functioning
> and his ability to pace himself. He is
> not able to complete a routine of caring
> for his children and himself without
> periods of rest and avoidance of social
> interaction. His social interaction
> with peers is limited and his ability to
> carry out a routine day of work is
> significantly limited. If he were to
> have a job with a 40 hour work week, I
> would expect him to miss work two to
> four times a week at a minimum because
> of his pain condition.

Tr. 415.

Ashworth contends Dr. Lundy's disability opinion should

be controlling. A treating physician's opinion on the nature and

severity of a claimant's impairment is controlling when it is

"well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent" with other

evidence of record. 20 C.F.R. § 404.1527(d)(2).

The ALJ found Dr. Lundy's opinion was not controlling because it was based entirely on Ashworth's subjective reports rather than supported by findings from standardized testing or mental-status examinations. An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaints and which the ALJ already has properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ found Ashworth's subjective reports were not credible, and Ashworth does not challenge that finding.

Even when a physician's opinion is not controlling, the ALJ must give it due consideration and may reject it only for proper reasons supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d at 957.

The ALJ properly relied on the absence of objective clinical findings to support his rejection of Dr. Lundy's opinion. Dr. Lundy's treatment notes do not suggest he observed any basis for finding Ashworth markedly impaired in any functional area. Dr. Lundy's notes reflect Ashworth's description of irritability, moodiness, lack of support from his wife, and dissatisfaction with various medications. Dr. Lundy's progress notes, however, do not suggest Ashworth is markedly impaired in major functional categories much less completely unable to perform basic work activities.

The ALJ also found Dr. Lundy's opinion was internally inconsistent. For example, Dr. Lundy found Ashworth markedly impaired in the ability to maintain attention and concentration, but not significantly impaired in the ability to carry out detailed instructions. Dr. Lundy's progress notes do not reflect he ever discussed concentration and attention issues while treating Ashworth.

Similarly, Dr. Lundy found Ashworth markedly impaired in the general category of social function, but he did not indicate more than moderate impairment in each of the component abilities within that category. In addition, there is not anything in Dr. Lundy's progress notes to support his opinion that Ashworth would have difficulty maintaining regular attendance or completing a workday.

The ALJ rejected Dr. Lundy's opinion that Ashworth would miss work frequently due to pain. The ALJ pointed out that Dr. Lundy is a psychologist and lacked expertise in assessing the pain that would be reasonable to expect as a result of Ashworth's orthopedic injuries. In particular, the physicians who treated Ashworth's orthopedic injuries did not support Dr. Lundy's opinion. They opined Ashworth would need to be retrained for sedentary work that did not require standing or walking for extended periods. They did not suggest his attendance would be affected by pain or any other symptom. Similarly, Dr. Bald found

Ashworth was precluded from standing or walking more than a cumulative two hours in an eight-hour workday. There is not any indication that Dr. Bald believed Ashworth would have difficulty completing a normal work schedule if he worked within appropriate limitations.

Finally, the ALJ relied on reports that Ashworth engaged in activities that were inconsistent with complete disability. Ashworth reported increasing his activity, walking two miles, performing yard work, experiencing stiffness if walking more than two hours, caring for his three children, reading, and watching television regularly. He reported an activity level was too hectic to permit him to comply with the recommendations of his physical therapist.

B. **Lay-Witness Statement**

Ashworth's wife testified everything changed after Ashworth's accident: He was no longer outgoing and social, and he became angry and frustrated because he could not do what he tried to do. She testified Ashworth could not stand on linoleum floors in their home without severe pain, and he had difficulty with daily activities such as watching the children and doing household chores.

Family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th

Cir. 1993).  Such testimony cannot be disregarded without

comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

If the ALJ wishes to discount lay-witness testimony, he must give

reasons that are germane to the witness.  *Id.*

The ALJ found Ms. Ashworth's testimony did not provide

reliable evidence that Ashworth is precluded from all types of

work activities.  In his RFC assessment, the ALJ recognized

Ashworth was limited to sedentary work that did not require a

great deal of standing and incorporated a limitation on

interactions with the public.  The ALJ, therefore, did not

directly reject Ms. Ashworth's testimony regarding Ashworth's

specific functional limitations but simply found her statements

did not support a finding of complete disability.

To the extent the ALJ's conclusion is construed as a

rejection of Ms. Ashworth's testimony, the ALJ provided legally

adequate reasons.  The ALJ evaluated Ms. Ashworth's testimony and

Ashworth's allegations together.  He found they did not reflect

disability in light of the absence of objective medical evidence

to support disabling impairments, of the medical-source opinions

indicating that Ashworth remained capable of sedentary work, and

of the evidence that Ashworth engaged in activities consistent

with the ability to perform sedentary work.

Ashworth objects because the ALJ discussed the testimony and

statements of Ashworth and Ms. Ashworth in conjunction without

separately stating reasons for rejecting the individual testimonies. The ALJ's reasons, however, were applicable to the statements of both Ashworth and his wife. The ALJ's consideration of their statements together did not make the reasoning less germane to Ms. Ashworth.

###### C. <u>Impairments in Combination</u>

Ashworth contends the ALJ failed to evaluate the combined effects of his impairments when the ALJ assessed Ashworth's RFC.

It is true that the ALJ must consider the combined effect of all the claimant's impairments without regard to whether any single impairment would be disabling if considered separately. 20 C.F.R. § 404.1523. The ALJ's decision, however, reflects he considered the combined effect of all of Ashworth's impairments, symptoms, and functional limitations. The ALJ considered the residual pain, weakness, and resulting depression from the work injuries to Ashworth's left leg and right foot, he considered the effects of arthritis in Ashworth's right foot and both ankles, and his RFC assessment represents a combination of functional limitations from these conditions without regard to whether any of them would be disabling if considered separately.

The Court finds the ALJ incorporated into his RFC assessment those functional limitations that were reasonably supported by the evidence. The ALJ, therefore, properly considered Ashworth's pain and the resulting functional limitations whether they

originated in Ashworth's work injuries, treatment, arthritis, or
psychological condition.  By evaluating all evidence of
functional limitations, the ALJ properly considered the combined
effect of Ashworth's impairments.

Ashworth does not identify any functional limitations
arising from the combination of his impairments that exceed those
in the ALJ's assessment.  Accordingly, the Court concludes the
ALJ did not err when he assessed Ashworth's RFC.

**IV.  Vocational Evidence**

At Step Five, the Commissioner must show the claimant can do
other work that exists in the national economy.  *Andrews v.
Shalala*, 53 F.3d at 1043.  The Commissioner may satisfy this
burden by eliciting the testimony of a VE with a hypothetical
question that sets forth all of the limitations of the claimant.
*Id.*

Ashworth contends the vocational evidence was legally
inadequate because the ALJ elicited testimony with a hypothetical
question that did not accurately reflect all of Ashworth's
functional limitations.  This argument relies on Ashworth's
previous assertions of error in the ALJ's RFC evaluation.  The
Court, however, has rejected each of Ashworth's other assertions
of error, and, therefore, Ashworth's contention of error at Step
Five cannot be sustained.

As noted, the ALJ's vocational hypothetical question accurately reflected the functional limitations in his RFC assessment. The functional limitations, in turn, were supported by substantial evidence in the record as a whole. Accordingly, the Court finds the ALJ did not err when he relied on the VE's testimony. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 14th day of November, 2005.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge